UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————————————
ELIZABETH ABRAMS, *as Parent and Natural Guardian of A.A.*, *et al.*,
                                Plaintiffs,

                -v-

NEW YORK CITY DEPARTMENT OF EDUCATION, *et al.*,
                                Defendants.
——————————————————————————

20-CV-5085 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

      Plaintiffs Elizabeth Abrams, as Parent and Natural Guardian of A.A., *et al.*, bring this action against the New York City Department of Education and Meisha Ross Porter, the chancellor of the Department of Education (collectively, "DOE"), alleging violations of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, and the New York Education Law, § 4404. Before the Court now is Plaintiffs' motion for summary judgment. For the reasons that follow, Plaintiffs' motion is granted.

I.      **Background**[1]

      Plaintiffs in this action are the parents or guardians of seventeen disabled children who reside in the City of New York. (Dkt. No. 102 ¶ 1.) In the summer of 2019, each plaintiff separately filed a Due Process Complaint ("DPC") challenging DOE's proposed placement for their child during the 2019-2020 school year and seeking reimbursement for their child's tuition at the International Institute for the Brain ("iBRAIN"), as well as special transportation and/or

———
[1] The following facts are undisputed unless otherwise noted.

nursing services. (Dkt. No. 102 ¶ 4.) All students were awarded a Pendency Order at iBRAIN in connection with his or her DPC proceedings for the 2019-2020 school year. (Dkt. No. 102 ¶¶ 13–14.) These Pendency Orders were issued by Impartial Hearing Officers ("IHO"), State Review Officers, and in one instance, a federal judge in the Southern District of New York. (Dkt. No. 102 ¶ 15.) Every student's Pendency Order was either never appealed, appealed and resolved in the student's favor, or eventually consented to by DOE. (Dkt. No. 102 ¶ 16.) The Pendency Orders required DOE to pay for the student's tuition at iBRAIN for the 2019-2020 school year, transportation services to and from school, and nursing services for three students. (Dkt. No. 102 ¶¶ 21–24.)

Around the same time, each plaintiff entered into a School Transportation Service Agreement (the "Agreement") with Sisters Travel and Transportation Services, LLC ("Sisters"), a specialized transportation service. (Dkt. No. 102 ¶ 46; *see also* Dkt. No. 92, Exs. 3A–3Q.) The Agreements cover the 2019-2020 school year and the general terms of each of the Agreements are identical. (Dkt. No. 102 ¶ 47.) DOE provisionally authorizes the funding of pendency services on a yearly basis based on the estimated costs of the services. (Dkt. No. 102 ¶ 56.) Here, Sisters submitted an affidavit for special school transportation services for each student, explaining that it had entered into a contract with the individual Plaintiff for the 2019-2020 school year. (*See, e.g.*, Dkt. No. 92, Ex. 3A at 6.) It also stated the services to be provided under the contract, the number of school days in the year, the contracted rate for services for each school day, and the total annual cost for the school year based on the rate and the number of school days. (*Id.*) DOE then requires that the provider submit invoices and thereafter authorizes the issuance of monies to fund the services. (Dkt. No. 102 ¶ 56.) Sisters submitted an invoice

every month listing "Date of Service" and the signatures of the parent/guardian and Sisters' manager.  (*See, e.g.*, Dkt. No. 92, Ex. 2.)

In March 2020, New York closed schools in response to the COVID-19 pandemic and shifted to a remote learning environment.  (Dkt. No. 102 ¶ 35.)  DOE suspended funding for the students' tuition at iBRAIN, as well as funding for each student's transportation and nursing services.  (Dkt. No. 102 ¶ 30.)  However, DOE has since reimbursed Plaintiffs for tuition and nursing services.[2]   Plaintiffs allege that DOE owes an outstanding balance of $450,331.20 for the students' transportation services between March and June 2020, which DOE disputes.  (Dkt. No. 102 ¶ 44.)

## II.     Legal Standard

A party is entitled to summary judgment if it can "show[] that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is "material" if "it might affect the outcome of the suit under the governing law."  *Hurley v. Tozzer, Ltd.*, No. 15 Civ. 2785, 2018 WL 1087946, at *1 (S.D.N.Y. Feb. 26, 2018) (quoting *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002)).  The party moving for summary judgment bears the burden of showing that no genuine dispute of material fact exists, *id.*, and in assessing whether the movant has carried this burden, a court "must view the evidence in the light most favorable to the party against whom summary

---

[2] The parties hardly discuss the reimbursement of nursing services in their briefs.  However, iBRAIN at certain points alleges that DOE still owes $86,940, which DOE disputes.  (*See* Dkt. No. 102 ¶¶ 45, 71.)  DOE contends that the only remaining dispute involves nursing services for S.J.D. in the amount of $64,080 but asserts that it has not received any invoices to account for that outstanding balance.  (Dkt. No. 102 ¶ 71.)

3

judgment is sought and must draw all reasonable inferences in his or her favor," *Access 4 All, Inc. v. Trump Int'l Hotel & Tower Condo.*, 458 F. Supp. 2d 160, 166 (S.D.N.Y. 2006).

## III. Discussion

DOE argues that summary judgment is not appropriate for three reasons: (1) many Plaintiffs need not yet pay Sisters under the terms of the Agreements; (2) the purpose of the Agreements has been so frustrated that Plaintiffs' (and therefore, DOE's) non-payment should be excused; and (3) because Plaintiffs had the opportunity to terminate the Agreements but failed to do so, DOE should not be forced to pay for these services as a matter of equity.[3] (*See* Dkt. No. 101 at 5–10.) The Court addresses each in turn.

### A. Requirement to Pay

DOE first contends that under the terms of the Agreements, many of the Plaintiffs do not yet have an obligation to pay Sisters. (Dkt. No. 101 at 6–7.) DOE points to the following provision: "[Sisters] agrees to suspend payment obligations until a Pendency Order, a final administrative or judicial decision is made." (Dkt. No. 92, Ex. 3A at 2; *see also* Dkt. No. 101 at 6.) DOE argues that this provision is ambiguous, as "[i]t leaves undefined whether payment obligations are separate from payment due dates" and through the use of the word, "or," it "creates an ambiguity as to when exactly any obligations arise, *e.g.*, after a pendency order, final administrative decision, or final judicial decision." (Dkt. No. 101 at 7.) Because some of the Plaintiffs have not yet received a final decision on their DPC, DOE contends, their payment obligations have not been triggered. (*Id.*)

---

[3] Because the arguments raised by DOE are based on contract interpretation, the Court applies New York law, as required under the Agreements. (*See, e.g.*, Dkt. No. 92, Ex. 19 at 6.) Both parties also apply New York law in their briefs, and there appears to be no dispute that New York law applies.

"When the terms of a written contract are clear and unambiguous, the intent of the parties must be found within the four corners of the contract, giving practical interpretation to the language employed and the parties' reasonable expectations . . . . Furthermore, interpretation of an unambiguous contract provision is a function for the court." *Patsis v. Nicolia*, 120 A.D.3d 1326, 1327 (2d Dep't 2014) (citing *Westchester Ctny. Corr. Officers Benevolent Assn., Inc. v. County of Westchester*, 99 A.D.3d 998, 999 (N.Y. 2012); *see also Greenfield v. Philles Recs., Inc.*, 98 N.Y.2d 562, 569 (2002) ("A contract is unambiguous if the language it uses has a definite and precise meaning, unattended by danger of misconception in the purport of the [agreement] itself." (internal quotation marks omitted)).

DOE's argument is unpersuasive. The unambiguous reading of the Agreements is that payment for Sisters' services is due once a Pendency Order, final administrative decision, or final judicial decision has been made, meaning that the occurrence of *any one* of these events triggers Plaintiffs' obligations to pay. This is also supported by other language found within the same paragraph, which explains that Sisters understands that Plaintiffs are seeking third party payments for the services from DOE, and therefore will not require payment until an order is issued directing DOE to pay for these services. (Dkt. No. 92, Ex. 3A at 2.) And it is undisputed that the Pendency Orders relevant to this matter required DOE to pay for transportation services.

To the extent that DOE argues that the Pendency Orders are not "final" and therefore payment is not due until a Findings of Fact and Decision ("FOFD") is issued by an IHO in the underlying due process challenge (*see* Dkt. No. 101 at 11–12), the Court is not persuaded. *See Cohen v. N.Y.C. Dep't of Educ.*, No. 19 Civ. 3863, 2021 WL 2158018, at *2 (S.D.N.Y. May 26, 2021) ("[P]ursuant [to] 20 U.S.C. § 1415(i)(1)(A) and N.Y. Educ. Law § 4404(1)(c), the IHO's pendency order [is] final, unless appealed.")

B.     **Frustration of Purpose**

DOE next contends that the purpose of the Agreements has been so profoundly frustrated that Plaintiff's (or DOE's) non-payment should be excused. (Dkt. No. 101 at 8.) They argue that since Governor Cuomo directed all schools to be closed in mid-March 2020, "the central and essential service contracted for—the transport of the Students to and from school on school days—became frustrated (if not outright prohibited)." (*Id.*)

Under New York law, "[i]n order to invoke the doctrine of frustration of purpose, the frustrated purpose must be so completely the basis of the contract that, as both parties understood, without it, the transaction would have made little sense." *Ctr. For Specialty Care, Inc. v. CSC Acquisition I, LLC*, 185 A.D. 3d 34, 42 (N.Y. App. Div. 2020). As numerous courts have noted, the "doctrine is a narrow one." *A/R Retail LLC v. Hugo Boss Retail, Inc.*, 149 N.Y.S.3d 808, 822 (N.Y Sup. Ct. 2021).

DOE's core argument here is that the pandemic-related shutdown "entirely frustrated" the express purpose of the Agreements. However, the undisputed facts do not support that conclusion. While the pandemic led to a few months of school shutdowns, Governor Cuomo ordered that special education services and instruction could resume in-person in the summer term for the 2020 school year. (Dkt. No. 101 at 8.) This is akin to the many commercial lease disputes that have arisen during the pandemic in which New York courts have consistently held that the "temporary and evolving restrictions on a commercial tenant's business wrought by the public health emergency do not warrant recission or other relief based on frustration of purpose." *A/R Retail*, 149 N.Y.S.3d at 823 (internal quotation marks omitted). As these courts have concluded, "[a] temporary hardship . . . would vastly expand the reach of these doctrines" if it

could excuse payment for services required by the contract. *Bay Plaza Cmty. Ctr., LLC v. Bronx Vistasite Eyecare, Inc.*, No. 656407/2020, 2021 WL 1794562, at *4 (N.Y. Sup. Ct. May 5, 2021).

Additionally, the Agreements plainly provide that payment is required whether the student uses the services or not, unless Sisters is at fault for the student not utilizing the services. (*See, e.g.*, Dkt. No. 102, Ex. 3A at 2.) It explains that payment of fees is not excused for "unexcused absences, withdrawal, suspension or for any other reason." (*Id.*) This language suggests that Plaintiffs and Sisters certainly contemplated circumstances in which Plaintiffs would be obligated to pay even if the students did not utilize the transportation services, further undermining DOE's argument that the Agreement's purpose was sufficiently frustrated such that non-payment should be excused.

  **C.**  **Non-Payment on Equity Grounds**

Finally, DOE contends that it should not be required to pay for transportation services because Plaintiffs could have terminated the Agreements under Section 7. (Dkt. No. 101 at 9–10.) Section 7 provides in relevant part that Plaintiffs "may terminate the AGREEMENT if [the student] . . . due to health reasons [] is no longer requiring special school transportation services." (*See, e.g.*, Dkt. No. 92, Ex. 3A at 3.) Raising what appears to be a duty to mitigate claim under New York law, DOE argues that it "should not be stuck with a bill that might have been reduced but for Plaintiffs' unwillingness to assert their rights." (Dkt. No. 101 at 10.)

The Court does not agree with DOE that Plaintiffs had a duty to seek to terminate their Agreements with Sisters. It was entirely unclear when schools would reopen, as evidenced by the executive orders cited in DOE's brief. *See, e.g.*, N.Y. Exec. Order No. 202.4 (requiring schools to close by March 18, 2020 for two weeks); N.Y. Exec. Order No. 202.11 (extending school closures to April 15, 2020); N.Y. Exec. Order No. 202.18 (extending the school closures

and explaining that closure will continue to be re-evaluated).  Plaintiffs could not have been expected to terminate their Agreements with Sisters, which provided critical transportation services for their children, given the uncertainty of when schools would reopen.

DOE also appears to make a policy argument — that forcing DOE to pay for services irrespective of whether those services have been provided would "incentivize providers (i) to intentionally inflate in their submissions to the DOE the estimated costs of their services and then act with indifference to the actual provision of services because DOE will pay regardless or (ii) if they later realize that the estimated cost of services submitted to the DOE was too high, providers will pad the billing on the backend." (Dkt. No. 101 at 14.)

The Court is not convinced by this argument.  The heart of this matters boils down to the DOE's legal obligations under the Pendency Orders.  Indeed, Plaintiffs' argument is simple.  First, DOE was legally required to provide payments for transportation services to Plaintiffs' children during the 2019-2020 school year, as provided in the Pendency Orders.  *See Ventura de Paulino v. N.Y.C. Dep't of Educ.*, 959 F.3d 519, 532 (2d Cir. 2020) ("When the [IHOs] in these [] cases concluded that [the school] was an appropriate [pendency] placement for the Students and the City chose not to appeal the ruling to a state review office, the City consented, by operation of law, to the Students' private placement at [the school].  At that moment, the City assumed the legal responsibility to pay for [the school's] educational services.").  DOE does not dispute this, nor does it claim that the Pendency Orders make payment of the services conditional on the services actually being rendered.  Nor could DOE, as the only restriction in the Pendency Orders that the Court can ascertain relate to the length of travel time for the services.  (*See, e.g.*, Dkt. No. 92, Ex. 1A at 22 (Pendency Order requiring that the student "shall attend iBRAIN and receive the following instruction and related services at public expense," including "[s]pecialized

transportation . . . limited time travel not to exceed sixty (60) minutes;" Dkt. No. 92, Ex. 1O at 16 (same).). Second, Plaintiffs signed Agreements with Sisters for transportation services, which provide that the fees are based on school days, and *not* based on whether the services were used. (*See, e.g.*, Dkt. No. 92, Ex. 3A–3G). Third, DOE did not pay for these services between March and June 2020, even though Plaintiffs were contractually obligated to pay Sisters in accordance with the Agreements. (*See generally* Dkt. No. 91.)

This is not a situation where Sisters, which is not even a party to this action, is trying to skirt the rules or fraudulently obtain more money than it had contracted to receive under the Agreements. Rather, Plaintiffs are enforcing their legal rights under the Pendency Orders to have the public pay for their tuition and related services, including specialized transportation. The Agreements they signed with Sisters require them to pay fees irrespective of whether the students use the services. DOE is therefore required to provide transportation services funding as directed under the Pendency Orders.

## IV.   Conclusion

For the foregoing reasons, Plaintiffs' motion for summary judgment is GRANTED. To the extent that there are remaining disputes over nursing services or tuition, the parties are directed to file a joint letter within four weeks after the date of this Order.

The Clerk of Court is directed to close the motion at Docket Number 90.

SO ORDERED.

Dated: February 22, 2022
New York, New York

_____
J. PAUL OETKEN
United States District Judge